UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>BRAXTON SINCLAIR LEWIS,<br><br>        Defendant. | Case No. 4:25-cr-00102-DCN<br><br>**MEMORANDUM DECISION AND ORDER ON AMENDED MOTION TO SUPPRESS** |

## I. INTRODUCTION

Before the Court is Defendant Braxton Lewis's Amended Motion to Suppress. Dkt. 30. The Government filed a Response (Dkt. 35) and Lewis filed his Reply (Dkt. 39). The Court held an evidentiary hearing on March 31, 2026, and took the matter under advisement. Upon review, and for the reasons set forth below, the Court **DENIES** the Motion to Suppress.

## II. BACKGROUND

On or about October 9, 2024, Pasadena Police Detective Jorge Salazar contacted Rexburg Police Lieutenant Ray Hermosillo to report that he found sexually explicit text messages and Snapchats between a 14-year-old girl and "Big Head Braxton"—later identified as Braxton Lewis. The text messages and Snapchats were found on the girl's

cellphone.[1] Lieutenant Hermosillo did a records check on Braxton Lewis and found that he was serving probation on two Idaho state convictions. After Lewis failed to appear for a probation meeting and for Mental Health Court, probation manually searched Lewis's cell phone and found sexually explicit videos that Lewis admitted he sent to a minor female. Law enforcement then ran a Cellebrite extraction and found evidence that Lewis purchased child pornography. Lewis was indicted by a federal grand jury. Dkt. 2. He moved to suppress the evidence found in the Cellebrite extraction (Dkt. 23) and later filed an Amended Motion to Suppress requesting the same relief (Dkt. 30). The Court held an evidentiary hearing on the Amended Motion to Suppress. Dkt. 41.

The Government called two witnesses at the evidentiary hearing: probation officer Mikhail Jimenez and Lieutenant Ray Hermosillo of the Rexburg Police Department. Their testimonies are summarized below.

1. Probation Officer Mikhail Jimenez's testimony.

On October 15, 2024, Lieutenant Hermosillo contacted Lewis's probation officer, Mikhail Jimenez, and shared the California screenshots and details. Lewis is a participant in the Upper Snake River Valley Mental Health Court and Jimenez is the probation officer for that specialty court. Under the terms of the Mental Health Court rules, Jimenez can search all participants, their person, property, and cell phones. Jimenez informed Hermosillo that he had a regular probation check-in meeting with Lewis the next day before Mental Health Court and he invited Hermosillo to attend the probation meeting.

---

[1] It is unclear whether this California search of the minor's cell phone was pursuant to parental consent or a warrant. Either way, that search has not been challenged here.

MEMORANDUM DECISION AND ORDER ON AMENDED MOTION TO SUPPRESS - 2

On October 16, 2024, Lewis failed to appear for the probation meeting or for Mental Health Court. Jimenez called Lewis, but there was no answer. Jimenez and another probation officer went to his house, found Lewis still asleep, woke him, and handcuffed him for officer safety while they conducted a safety sweep of the house. Jimenez then called Hermosillo and invited him over to Lewis's house to assist in the probation search. Hermosillo showed up after probation had handcuffed Lewis. Lewis told probation his cell phone was in his bedroom. It was not. Jimenez found Lewis's cellphone in the bathroom. Lewis gave Jimenez his passcode to unlock the phone. Jimenez unlocked the phone and accessed Snapchat where he discovered masturbation videos. Lewis said he had sent those videos to a minor female.

Probation does not have the equipment to extract cellphone information so law enforcement must do any extraction. Probation does not have the ability to recover deleted messages, so other agencies would have to do that as well. Jimenez showed Hermosillo what he found on the phone, and Hermosillo said that he could recover that information and any deleted communications or images from the cell phone using the Cellebrite extraction system. Hermosillo kept the cellphone to do an extraction. Jimenez violated Lewis on his Mental Health Court violations for unapproved relationship with a minor and behavior dangerous to others. He took Lewis into custody.

2. Lieutenant Raymond Hermosillo's testimony.

Detective Lieutenant Hermosillo testified that he is a trained and experienced Cellebrite operator. Using the Cellebrite system, he can download and extract information from cell phones. He arrived at Lewis's house after probation had already handcuffed

MEMORANDUM DECISION AND ORDER ON AMENDED MOTION TO SUPPRESS - 3

Lewis. Hermosillo told Lewis he was there because of an inappropriate contact with a minor female, not because he missed his probation appointment.

At that point, Hermosillo turned on his recorder, but the recording is garbled and hard to decipher. *See generally* Govt's Exhibit 1000. Hermosillo testified that Lewis said it was okay for him to take the cell phone.[2] Hermosillo said he wanted to use Cellebrite to recover messages and deleted information. Hermosillo believed he had consent and probable cause to search the cell phone. After taking custody of the cell phone at Lewis's house, Hermosillo performed a Cellebrite extraction on the phone without a warrant.

The extraction took place on October 24, 2024, eight days after the cell phone was seized at Lewis's house. The extraction revealed information about child pornography, particularly receipts for the purchase of child pornography and links to child pornography. Hermosillo gave the Cellebrite report to the FBI. On October 25, 2024, an FBI officer and Lieutenant Hermosillo met with Lewis at the jail. Following Miranda warnings and during the recorded jail interview, Lewis signed written consent forms authorizing a search of his cellphone and access to his online accounts. Lewis also gave detailed confessions about his communications with the minor and his purchase of child pornography.

Lewis has been arrested and charged in federal court with two counts: (1) Receipt of Child Pornography; and (2) Transfer of Obscene Material to a Minor. Dkt. 2. Count One is based on the information from the Cellebrite extraction. Count Two is based on the masturbation videos probation found on the cell phone. Lewis has moved to suppress all

---

[2] On the recording, it appears Hermosillo ask if he could take Lewis's phone. Lewis said something inaudible. Hermosillo then asked, "was that a yes or a no?" Lewis said "yes." Hermosillo followed up: "Yes, you do care or yes you don't care?" Lewis said "yes, I don't care."

information from the Cellebrite extraction. He does not challenge probation's search of the phone at his house. Dkt. 39, at 3.

### III. LEGAL STANDARD

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., Amendment 4. The "ultimate touchstone of the Fourth Amendment is reasonableness." *Riley v. California,* 573 U.S. 373, 382 (2014). The *Riley* Court further recognized that:

> Our cases have determined that where a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, reasonableness generally requires the obtaining of a judicial warrant. Such a warrant ensures that the inferences to support a search are drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement.

*Id.* at 383 (citation modified). The Supreme Court went on to hold that the exception for "search incident to arrest" did not apply to searches of data on cell phones. *Id*. at 387. Police can seize a cell phone incident to arrest but may not search it incident to arrest. *Id.* Instead, officers must generally secure a warrant before conducting such a search. The Ninth Circuit has held that the reasoning in *Riley* applies to warrantless, suspicionless searches of probationers' cell phones. *United States v. Lara*, 815 F.3d 605, 612 (9th Cir. 2016). The issue is not solely whether the probationer accepted cell phone searches as a condition of probation, but whether any search he agrees to is reasonable. Reasonableness of the search requires the Court to evaluate the circumstances of the particular case. *Id.* at 610. In doing

so, the Court balances "on the one hand, the degree to which the search intrudes upon an individual's privacy and, on the other, the degree to which the search is needed for the promotion of legitimate government interests." *Id.* (quoting *United States v. Knights*, 534 U.S. 112, 119 (2001)).

## IV. ANALYSIS

When a person is on probation, his reasonable expectation of privacy is lower than someone who has completed probation or who has never been convicted of a crime. *Lara*, 815 F.3d at 610. But while the privacy interest of a probationer has been "significantly diminished," it is still substantial. *Id.*

Lewis correctly concedes that the warrantless search of his house was proper. Dkt. 39, at 1. The terms and conditions of his probation authorized such a search. Dkt. 30-1, at 6, ¶ 7. Probation properly entered his home and did a home search based upon reasonableness because Lewis missed his scheduled probation meeting, missed his Mental Health Court, and was suspected of engaging in an inappropriate relationship with a minor.

Lewis also correctly concedes that the manual search of his cell phone at his house was proper. It also was a search done pursuant to the terms and conditions of Lewis's conditions of probation with the Idaho Department of Corrections ("IDOC") and the Mental Health Court agreement. Dkt. 30-2, ¶ 5; Dkt. 30-3, at 4, ¶ 10.[3] However, Lewis argues that once the phone went from probation to law enforcement, that triggered a new warrantless search that violated his constitutional rights. He bases his argument on three

---

[3] The Government argues that the probation search was also proper under the conditions of court ordered probation. However, the court probation conditions only authorize the warrantless search of the probationer, his residence, and his vehicle. Dkt. 30-1, ¶ 7.

MEMORANDUM DECISION AND ORDER ON AMENDED MOTION TO SUPPRESS - 6

theories: (1) law enforcement is not probation and had no right to search the cell phone without a warrant; (2) the eight days between probation's search at the house and the Cellebrite extraction illustrates they were two separate searches; and (3) the search of the phone at the house was to see if he violated any terms and conditions of the Mental Health Court but the Cellebrite extraction was to see if he committed any new crimes.[4]

The Government argues the Cellebrite extraction was lawful, based upon reasonable suspicion, either under Lewis's terms of condition with IDOC, the Mental Health Court conditions, or under voluntary consent. The Court will address Lewis's three theories in turn. In doing so, that will also cover the Government's theories.

### A. Law Enforcement's Authority to do a Warrantless Search.

Lewis first argues his terms and conditions in Mental Health Court did not authorize a cell phone search by anyone except probation. Specifically, his agreement with the District 7 Mental Health Court states:

> 10.  All Participant cell phones are subject to search by probation officer at any time. Any information found will be subject to a response. Deleting messages and information is not allowed and will be treated as trying to "hide" information and can be subject to a sanction.

Dkt. 30-3, at 4. Lewis initialed that paragraph. *Id.* As stated above, Lewis concedes that probation had the right to manually search his cell phone at his residence. But, he argues that the right to search his phone ceased once law enforcement took control of the phone away from probation. That argument fails.

---

[4] This argument ignores the fact that any new crime *is* a violation of the terms and conditions of the Mental Health Court.

MEMORANDUM DECISION AND ORDER ON AMENDED MOTION TO SUPPRESS - 7

Courts in this circuit have consistently held that when a probation officer gives a cell phone to law enforcement to assist in a search, that alone is not a violation of constitutional rights. *See, e.g., United States v. Harper,* 928 F.2d 894, 897 (9th Cir. 1991) ("[P]olice may not use a parole officer as a 'stalking horse' to evade the fourth amendment's warrant requirement. However, police and parole officers are entitled to work together to achieve their objectives; concerted action does not in and of itself make a search constitutionally infirm.") (citation modified); *United States v. Johnson,* 2022 WL 1315305, *1 (9th Cir. 2022) (quoting *United States v. Jarrad,* 754 F.2d 1451, 1454 (9th Cir. 1985)("No violation of Fourth Amendment where search was independently initiated by parole officer and other law enforcement became involved at parole officer's request.); *Peterson v. Buyard,* 2022 WL 347602, at *5 (E.D. Calif. 2022) (Probation officer permitted to request search of cell phone by HSI as part of joint investigation.).

This principle makes logical sense because the Government has a dual concern with a probationer: to get him integrated back into the community while recognizing he is more likely to engage in criminal conduct than an ordinary member of the community. *Knights,* 534 U.S. at 120-21. The Government does not have to choose which concern is the basis for its warrantless search. The Supreme Court held: the Fourth Amendment does not put the State to such a choice. Its interest in "apprehending criminal law violators, thereby protecting potential victims, may justifiably focus on probationers in a way that it does not on the ordinary citizen." *Id.* at 121. So long as the Government has reasonable suspicion to conduct a probation search, the search is valid. The Cellebrite extraction was a joint investigation arising out of what probation found on the cell phone while at the house. It

MEMORANDUM DECISION AND ORDER ON AMENDED MOTION TO SUPPRESS - 8

was not a second investigation.

Probation went to Lewis's house because he missed a required probation check-in, missed Mental Health Court, and there was reasonable suspicion that he was in an inappropriate relationship with a minor. It was not because the police asked probation to go there. Once there, probation found and checked Lewis's cell phone. That search was limited to the Snapchat App on the phone. It provided information that created a reasonable suspicion that Lewis violated the Mental Health Court rules by having an unapproved relationship with a minor and by engaging in dangerous behavior to others when he sent his masturbation videos to the minor.

Probation then handed the cell phone off to law enforcement to do a Cellebrite extraction. Lieutenant Hermosillo did a Cellebrite extraction on the phone and found Telegram messages showing that Lewis purchased child pornography.[5] The Telegram messages and the extraction report themselves were never sent to probation; however, Hermosillo did verbally report his findings to probation. Probation Officer Jimenez testified the information he received from the police after the Cellebrite extraction was provided to the Mental Health judge and team. Purchasing or possessing child pornography is a violation of Mental Health rules. Dkt. 30-3, at 3, ¶ 1, "Obey all laws." Lewis was terminated from Mental Health Court for violation of his terms and conditions of that court.

Under the specific facts and circumstances of this case, it was proper for law enforcement to do the Cellebrite extraction. Probation had already seized the cell phone,

---

[5] No actual child pornography was found on Lewis's phone. The Snapchat messages showed Lewis sent masturbation videos to a minor female. The Telegram messages discussed Lewis's purchase of child pornography and contained links to Mega folders of child pornography.

and Lewis gave them the PIN code. Probation had already opened the cell phone and the Snapchat App on that phone and had found sexually explicit information (videos of him masturbating) that Lewis admitted he sent to the minor girl. Law enforcement then told probation they could do a more in-depth search using the Cellebrite System, which would search the entire phone and find even find deleted information. Probation could not do a Cellebrite extraction. Probation gave the phone to Lieutenant Hermosillo to conduct that additional search. Probation and law enforcement knew of the investigation in California and that any additional information from the Cellebrite extraction could further show that Lewis failed to comply with the terms of the Mental Health Court by committing new crimes.

The law permits law enforcement to assist probation as it did here. The Court finds that the Cellebrite extraction was a continuation of the probation search that began at the house and not a separate search.

### B.  Length of Time Between Seizure of Cell Phone and Cellebrite Extraction.

Lewis next argues the fact there was an eight-day gap between seizing the phone and the Cellebrite extraction shows the extraction was a second or new search improperly done without a warrant.[6] To make this argument, Lewis argues that courts consistently treat this pattern—a probation officer's manual phone search followed by a law enforcement officer's forensic extraction—as two separate and distinct searches. He then cites to a case from the Sixth Circuit, *United States v. Fletcher*, 978 F.3d 1009, 1012–13 (6th Cir. 2020),

---

[6] Lewis does not argue that the eight-day gap was too long to justify the extraction.

and a case from the Second Circuit, *United States v. Lajeunesse*, 85 F.4th 679, 683 (2d Cir. 2023). Those cases have no precedential value here. But, even if they did, they do not help the defense.

*Fletcher* involved a very different situation than this case. There, the Sixth Circuit invalidated a probation officer's search of a cellphone because the probation officer did not have reasonable suspicion to search the cell phone[7] and because Fletcher's probation agreement did not authorize the search. True, the Sixth Circuit then addressed whether the later law enforcement extraction should be deemed appropriate because it was done subsequent to a warrant that was obtained following the original manual search of the phone. The Sixth Circuit held that because the warrant was based solely on the information the probation officer unlawfully seized, the warrant was invalid. At no time, however, did the Sixth Circuit discuss whether the search by law enforcement was a separate search or a continuation of the probation search. It simply held that the probation search was unlawful and could not form the basis for the warrant later used by law enforcement.

In *Lajeunesse*, the parties in the plea agreement treated the searches as two separate searches—one by probation and one by law enforcement—but the Second Circuit never actually ruled that they were separate searches. It merely held that the probation search was lawful on the basis of the probation agreement, voluntary consent, and reasonable suspicion. It also held that law enforcement's further warrantless search of the cell phone

---

[7] The government argued that reasonable suspicion existed because the defendant had two cell phones and acted nervous when the probation officer said he was going to search the phones. The Court held that two phones is not sufficient to suspect criminal activity. And nervousness after being told a search would happen does not justify the search itself.

MEMORANDUM DECISION AND ORDER ON AMENDED MOTION TO SUPPRESS - 11

was lawful "because it was justified by the findings on the earlier cell phone search . . . [and] we have concluded that the initial search . . . was reasonable under the Fourth Amendment." *Id.* at 691.[8] Neither of these two cases hold that a probation search followed by a law enforcement search were actually two separate searches rather than one continual search.

Lewis also cites a Ninth Circuit case, *United States v. Cotterman,* 709 F.3d 952 (9th Cir. 2013) (en banc), for the proposition that a forensic examination is materially different from a prior manual inspection and cannot be treated as a continuation of the earlier manual inspection. *Cotterman*, however, did not involve an individual on probation who had a lesser expectation of privacy than the average citizen. It involved an average citizen subjected to a warrantless search at the border without reasonable suspicion. The Ninth Circuit recognized both that a suspicion-less cursory scan of a package in international transit was not unreasonable and that it had previously approved a quick look and unintrusive search of laptops in  border searches. *Id.* at 960.  The Government argued that the later forensic examination was just an "extended border search" that merely requires particularized suspicion. *Id.* at 961. The Ninth Circuit disagreed, stating, "an extended border search [is] any search away from the border where entry is not apparent, but where the dual requirements of reasonable certainty of a recent border crossing and reasonable suspicion of criminal activity are satisfied." *Id.*

The Ninth Circuit went on to explain whether the forensic examination occurred at

---

[8] This same reasoning can be applied to this case. Law enforcement's Cellebrite extraction was lawful because it was justified by the masturbation videos on the earlier probation cell phone search.

MEMORANDUM DECISION AND ORDER ON AMENDED MOTION TO SUPPRESS - 12

the border or 175 miles away did not determine whether the warrantless forensic examination was appropriate. It was the lack of any reasonable suspicion at the outset that doomed the forensic examination. In essence, Cotterman was an average person subjected to a warrantless search without reasonable suspicion. The cursory scan of the computer at the border was appropriate, but the forensic examination went too far without reasonable suspicion. The Ninth Circuit did not address whether the cursory search and the forensic search were two distinct searches. Instead, it stated "we consider the reasonableness of a computer search that began as a cursory review at the border but transformed into a forensic examination of [a] hard drive." *Id.* at 957. Clearly, the Ninth Circuit viewed the situation as one search that transformed from a cursory review to a forensic review, not two separate searches. Nothing in *Cotterman* suggests the Ninth Circuit held a forensic examination cannot be treated as a continuation of the manual search. Instead, *Cotterman* merely states that, when a cursory border search transforms into a forensic examination, there must be reasonable suspicion.[9] Thus, none of the cases Lewis relies on for the argument that probation's search at the house and law enforcement's forensic evaluation are two separate and distinct searches support that argument.

The Ninth Circuit has stated that an "unreasonable delay between the seizure of a package and obtaining a search warrant may violate the defendant's Fourth Amendment rights." *United States v. Hill*, 2022 WL 2644102, at *3 (9th Cir. 2022) (quoting *United States v. Sullivan,* 797 F.3d 623, 633 (9th Cir. 2015)). Determination of whether a delay

---

[9] *See United States v. Cano*, 934 F.3d 1002, 1016 (9th Cir. 2019) ("Accordingly, we hold that manual searches of cell phones at the border are reasonable without individualized suspicion, whereas the forensic examination of a call phone requires a showing of reasonable suspicion. *See Cotterman,* 709 F.3d at 968.").

was reasonable is based on "the totality of the circumstances, on a case-by-case basis, and entails a balance of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* (citation modified). The package in *Hill* was a cell phone. The delay in *Hill* was two years—which the Court found reasonable under the totality of the circumstances.

Here, a delay of eight days between seizure of the phone and the Cellebrite extraction is reasonable under the totality of the circumstances. Best practices suggest that getting a warrant during that time would have been preferable, but that does not make it necessary. Lewis concedes the original seizure and search was reasonable. Case law cited above supports probation's decision to give the phone to law enforcement to do the Cellebrite extraction. The Snapchat videos found during the initial search of the cell phone created reasonable suspicion to transform the search into a Cellebrite extraction. Lewis never moved for the return of his phone during the eight days. He was in custody and could not have used the phone anyway. The eight-day delay does not support Lewis's argument that the extracted contents of his cell phone must be suppressed.

## C. Differences in Purpose.

Third and finally, Lewis argues that the purposes of the "two" searches were different such that the Cellebrite extraction was not part of a proper warrantless probation search. The Government argues that either the Cellebrite extraction was part of probation's search or, if not, Lewis consented to the Cellebrite extraction regardless.

The initial search of the cell phone by Probation Officer Hermosillo was proper.

Lewis concedes as much. That search had nothing to do with Lewis missing his probation meeting or Mental Health Court. It had to do with seeking evidence that Lewis either was in an unapproved relationship or committing new crimes. That search yielded the masturbation videos sent to a minor girl. Both probation and law enforcement wanted to see if the cell phone had further information of the unapproved relationship or of a new crime. Those are violations of the Mental Health Court's conditions. The information gathered from the Cellebrite extraction went to the Mental Health Court before Lewis was terminated from participation in that court for violation of conditions.

*Knight* makes it clear that the Government does not have to choose between a rehabilitation goal and a protection of society goal. 534 U.S. at 112. Both are proper goals of a probationary search based upon reasonableness. Here, the forensic search was a proper extension of the manual search. Eight days between them did not remove the properness of the extended search and both searches were related to the same purpose.

Finally, in the alternative, the Government argues that Lewis gave consent for the Cellebrite extraction. Lewis argues that he did not. Lewis clearly consented to probation's search of his cell phone when he entered the Mental Health Court. Consent only becomes an issue if law enforcement had no right to do the extended search with the Cellebrite extraction.

In *United States v. Brown,* the Ninth Circuit made it clear that consent is an exception to the warrant clause of the Fourth Amendment. 563 F.3d 410, 414-15 (9th Cir. 2009). The Government bears the burden of proving that consent was voluntary. *Id.* at 415. Whether consent to search was voluntarily given is to be determined from the totality of

MEMORANDUM DECISION AND ORDER ON AMENDED MOTION TO SUPPRESS - 15

all the circumstances. *Id.* (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)).

Five factors can be considered in determining voluntariness:

> (1) whether the [consenting individual] was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the [consenting individual] was notified that she had a right not to consent; and (5) whether the [consenting individual] had been told a search warrant could be obtained.

*Id.* (bracketing in original). However, these factors are not a mechanized formula to resolve the voluntariness inquiry, they merely serve as guideposts. *Id.*

Hermosillo testified he asked Lewis if he could take his phone and download it with the Cellebrite software. Lewis's response was vague and ambiguous, so Hermosillo asked clarifying questions. Ultimately, Lewis said "I don't really care." While Hermosillo, Lewis, and Jimenez were talking, Hermosillo said that he could download all the contents of the phone and could recover deleted messages. He also said he could go get a warrant. This was all before probation found the cell phone and before Lewis gave them the passcode to open his phone. Hermosillo never told Lewis he had the right to refuse to talk with him. No one read Lewis his Miranda rights. No one drew their firearms or made any threats. No one raised their voices.

Courts have consistently held that "I don't care" can be enough to show voluntary consent. *See United States v. Polly,* 630 F.3d 991, 998 (10th Cir. 2011) (collecting cases); *U.S. v. Watkins,* 2022 WL 16830876, *6 (N.D. Ohio 2022) (collecting cases). The fact of custody alone has never been enough to demonstrate a coerced consent to search. *United States v. Watson,* 423 U.S. 411, 424 (1976). Likewise, it is not necessary that Lewis be told that he had the right to refuse consent to search his cell phone. *Schneckloth v. Bustamonte,*

MEMORANDUM DECISION AND ORDER ON AMENDED MOTION TO SUPPRESS - 16

412 U.S. 218, 231–32 (1973). Under the totality of the circumstances, Lewis consented to the extended search of his cell phone.

## V. ORDER

1.  The Amended Motion to Suppress (Dkt. 30) is **DENIED.**

DATED: April 13, 2026

David C. Nye
U.S. District Court Judge